UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DUSTIN LEE HONKEN, | : | |
| Plaintiff, | : | No. 2:20-cv-00342-JRS-DLP |
| v. | : | *** Capital Case *** |
| WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; DONALD W. WASHINGTON, in his official Capacity as the Director of the United States Marshal Service; and T.J. WATSON, in his official capacity as the Complex Warden for the United States Penitentiary, Terre Haute, | : | **Execution scheduled for July 17, 2020** |
| Defendants | : | |

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Dustin Lee Honken, through undersigned counsel, files this response to the Court's July 15, 2020 Order Directing Plaintiff to Show Cause Why Action Should Not Be Dismissed As Moot (Filing No. 9) and respectfully submits that this action is not moot. In support thereof, he states:

1)      Plaintiff is a prisoner at the United States Penitentiary in Terre Haute, Indiana (USP Terre Haute), and is scheduled for execution tomorrow, July 17, 2020 at 4:00 p.m.

2)      On June 23, 2020, Plaintiff made written request of both the BOP Staff (BP-8) and the Warden (BP-9) "to choose a Catholic priest or bishop to be in my immediate presence in the execution chamber before and during my execution. . . . Please let me know if this will be

1

approved and by when I should provide the name of my chosen priest or bishop." *See* Complaint for Injunctive Relief and Declaratory Judgment (Filing No. 9) ¶ 11.  These requests were denied on June 23, 2020.  *Id.*

3) On July 3, 2020, Plaintiff brought this suit for violations and threatened violations of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq.*, and Free Exercise Clause of the First Amendment to the United States Constitution, seeking declaratory and injunctive relief permitting his spiritual advisor to be present to minister to him before and during his execution, including in the execution chamber.  *Id.*  This includes the accompaniment and ministry of a priest, and the ability to receive the Last Rites, make his last confession, and recite a good act of contrition *until the moment of death*."  *Id.* ¶ 20 (emphasis added).  Plaintiff's request is consistent with longstanding American tradition, including in federal executions.  *Id.* ¶¶ 21-23.

4) On or about July 5, 2020, Plaintiff received a letter from Defendant T.J. Watson, Warden of Terre Haute (USP), advising him that his designated spiritual advisor, Father Mark O'Keefe, will now be permitted a "brief, no-contact visit" with Mr. Honken in the execution room and will be permitted to remain in the execution room with an assigned staff member during the execution, but will be subject to removal under certain circumstances, including if "confidential staff need to enter the room during the procedure."  *See* Filing No. 8-1.

5) In light of BOP's reversal of course, counsel for Plaintiff engaged in email and phone discussions with counsel for the Government about the terms under which Father O'Keefe will be permitted to minister to Plaintiff, both during a contact visit prior to the execution and in the execution room itself.

6) Among other things, counsel for the Government advised Plaintiff's counsel that once the lethal injection procedure begins, Father O'Keefe will be required to stand to the side and "will not be able to communicate verbally with Mr. Honken while they are in the Execution Room." *See* Filing No. 10-1.  This restriction on the ability of Father O'Keefe to pray with Plaintiff for the full duration of the execution procedure is inconsistent with Plaintiff's religious rights and wholly unnecessary and unjustified.  Counsel for Plaintiff has been informed that during the execution of Daniel Lewis Lee, Mr. Lee's spiritual advisor was permitted to pray with him for the full duration, up to and even after his death.  The Government has offered no reason that Father O'Keefe, who is a Catholic priest and BOP-accredited volunteer, should not likewise be so permitted.

7) It is also not clear whether Father O'Keefe will be within visual eyesight of Plaintiff when he is sidelined in the execution room at the commencement of the execution procedures.  Plaintiff's access to Father O'Keefe, both visually and verbally, is critical to his sincerely-held Catholic religious practice, which requires that Father O'Keefe be available to pray, minister, and listen—up until the moment of death—in order to guide Plaintiff into the next life in the full grace of God.  *See* Compl. ¶ 36.

8) Additionally, Counsel for Plaintiff is in the process of clarifying what the Government means by "brief" no-contact visit in the execution room.  Plaintiff's spiritual needs requires more than just "brief" ministry from Father O'Keefe, especially since the execution protocols provide that Plaintiff will be in the execution room for thirty minutes.  The Catholic Church teaches that the final moments are critical to salvation in the next life, and Plaintiff must be permitted access to his chosen priest to make a proper confession as close to his death as possible.  The recent experience from the execution of Mr. Lee provides additional reason for

concern about the time limitation imposed by the Government. Counsel for Plaintiff understands that Mr. Lee was strapped to the gurney for four hours in the execution chamber.[1] Should that happen, limiting Father O'Keefe to a "brief no-contact visit" at the outset would deprive Plaintiff of Father O'Keefe's ministry for several hours in the chamber, and for no compelling government reason.

9) Lastly, the Government has indicated that Father O'Keefe "will be escorted out of the room" if members of the execution team need to enter the chamber during the execution. Counsel for the Government has represented by email that this would happen only in the event of an unforeseen medical or safety issue. But since this representation came from DOJ counsel who has not even entered an appearance in this case, there is nothing to prevent BOP from unilaterally altering its position on this score and removing Father O'Keefe even in the absence of an emergency (for example, as part of routine and foreseeable procedures).

10) In light of the foregoing, this case is not moot. A defendant's "voluntary cessation of a challenged practice" does not moot an action. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). If it did, "the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 10 (1982) (quoting *United States* v. *W. T. Grant Co.*, 345 U.S. 629, 632 (1953). The burden is on the Government to demonstrate that the likelihood of future violations is "sufficiently remote" to warrant a finding of mootness. *Id.* This burden is a "heavy one." *W. T. Grant Co.*, 345 U.S. at 633.

11) Here, although Defendants reversed course after the filing of this lawsuit, agreeing to permit Father O'Keefe in the execution room (but subject to certain restrictions not

---

[1] *See* Tim Evans and Holly Vays, *'You're killing an innocent man': Daniel Lewis Lee executed in Terre Haute federal prison*, Indianapolis Star (Jul 14, 2020).

justified by a compelling interest), there is nothing to stop them from reversing course again between now and the time of Plaintiffs' execution. This concern is all the stronger in light of the fact that BOP's letter to Plaintiff mentioned nothing about requiring Father O'Keefe to remain silent in the execution room, a limitation that was only disclosed upon further inquiry by Plaintiff's counsel. Moreover, informal representations from DOJ counsel —for example, about the circumstances under which Father O'Keefe would be escorted from the execution room—do not provide "reasonable assurance that the questioned conduct will not be resumed." *See Vickery v. Jones*, 878 F. Supp. 11791183 (S.D. Ill. 1995).

12) Finally, Defendants' refusal to permit Father O'Keefe to speak to or pray with Plaintiff during the execution, for which the Government has offered no compelling justification, presents an independent basis for this Court's continuing jurisdiction. Counsel for Plaintiff is in the process of engaging with the Government on this issue but submits that this Court must retain jurisdiction to entertain a challenge to this limitation if the Government fails to accommodate Plaintiff in the same manner than it appears to have accommodated Mr. Lee earlier this week, which includes allowing Plaintiff and Father O'Keefe to communicate and pray with each other for the full duration of the execution procedure.

Dated:  July 16, 2020                        Respectfully submitted,

                                              By:     */s/  Abigail A. Clapp*

Abigail A. Clapp (Ind. Atty. No. 25444-45)
Greenberg Traurig, LLP
77 W. Wacker Dr., Ste. 3100
Chicago, IL   60601
Tel.    (312) 456-8400
Fax    (312) 899-0393
Email   ClappA@gtlaw.com